**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **TARA LYNN BOWNESS GEIGER**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. DEPARTMENT OF STATE**, *et al.*, <br><br> Defendants. | Case No. 1:22-cv-02986 (TNM) |

**<u>MEMORANDUM OPINION</u>**

Tara Lynn Bowness Geiger and Nathan Marc Geiger are married Canadians seeking

permanent residency in the United States.  In January 2021, Mrs. Geiger applied for an

employment-based visa for herself and her husband.  To date, the Government has not finished

processing their applications.  The Geigers seek a writ of mandamus compelling the Government

to process and approve their visas.  The Government now moves to dismiss for failure to state a

claim.  The Court will grant the Government's motion.  Plaintiffs have not pled facts suggesting

the delay is unreasonable or that it violates their due process rights.

**I.**

The Geigers applied for a visa allowing some foreign citizens to reside permanently in

the United States if they can show they have employment in the United States or are employable.

*See generally* Employment-Based Immigrant Visas, DOS, https://perma.cc/Y42N-VQYN.[1]  Mrs.

Geiger applied for the visa with her husband as a derivative.  *See* Pet. ¶ 10.

---

[1]  This Court may take judicial notice of official information posted on government websites without converting the Government's motion into one for summary judgment.  *See Pharm. Rsch. & Mfrs. of Am. v. HHS*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

The process goes like this:  First, the alien or the alien's employer must file a petition with U.S. Citizenship and Immigration Services (USCIS).  *See Khushnood v. USCIS*, No. 21-cv-02166, 2022 WL 407152, at *1 (D.D.C. Feb. 10, 2022).  If USCIS approves the petition, USCIS sends it to the National Visa Center (NVC).  *See id.*  NVC then forwards the approved petition to the U.S. embassy or consulate where the alien lives.  *See id.*  A local consular officer is then responsible for interviewing the alien.  *See id.*

This is where the Geigers are stuck.  *See* Pet. ¶ 15.  Mrs. Geiger filed her I-140 application on January 26, 2021.  *See id.* ¶ 10.  And NVC has considered her case ready for review since July 6, 2021.  *See id.* ¶ 14.  But the embassy has yet to schedule a consular interview.  *See id.* ¶ 15.  Fed up with waiting, the Geigers sued the Government under the Administrative Procedure Act (APA) and Due Process Clause of the Fifth Amendment.  *See id.* ¶¶ 17, 25; Pls.' Opp'n to Defs.' Mot. to Dismiss (Opp'n) at 7, 10–11, ECF No. 7.  They petition for a writ of mandamus compelling the Government to issue their visas and "complete all administrative processing" within 60 days.  *See* Pet. at 6–7.  The Government has moved to dismiss.  *See* Mot. to Dismiss (MTD), ECF No. 5.  The Court has jurisdiction under 28 U.S.C. § 1331 and will grant the motion.

## II.

A plaintiff must "state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  To do that, she must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In ruling on a motion to dismiss, courts treats the complaint's factual allegations as true and reads inferences in the plaintiff's favor.  *See L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017).  Courts may consider facts alleged in the

complaint, documents attached to the complaint, and matters of which it may take judicial notice. *See Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006).

## III.

The Government asks the Court to dismiss for two reasons.  First, it says there has been no unreasonable delay.  Second, it says that its actions did not violate the Geigers' due process rights.  The Government is correct on both scores.

## A.

The Geigers argue that the Government has unreasonably delayed scheduling their consular interview.  *See* Pet. ¶¶ 17–18.  That delay, they claim, violates the APA, which requires the Government to act "within a reasonable time."  *Id.* ¶ 17 (quoting 5 U.S.C. § 555(b)).  The Government counters that any delay in processing the application is not unreasonable.  *See* MTD at 5.  The Court agrees.

"There is no per se rule as to how long is too long to wait for agency action[.]"  *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (cleaned up).  Addressing an unreasonable delay claim is "ordinarily a complicated and nuanced task requiring consideration of particular facts and circumstances before the court."  *Mashpee Wampanoag Tribal Council,*

*Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  So courts in this circuit consider the so-called *TRAC* factors, which serve as guides:

> (1) the time agencies take to make decisions must be governed by a rule of reason;

> (2) when Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

> (4) the effect of expediting delayed action on agency activities of a higher or competing priority;

> (5) the nature and extent of the interests prejudiced by delay; and

> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

Applying the *TRAC* factors, the Court finds that the Geigers have not stated a plausible claim that the Government unreasonably delayed their consular interview.

**1.**

The first and second *TRAC* factors assess "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  These two factors are "typically considered together," *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020),

though the first has been called the "most important," *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).

 Congress has not supplied a timeline for processing visas. *See Mohammad v. Blinken*, 548 F. Supp. 3d 159, 165 (D.D.C. 2021). So the Court "turn[s] to case law as a guide" to what constitutes unreasonable delay. *Milligan*, 502 F. Supp. 3d at 318.

While courts have generally found immigration delays in excess of five, six, or seven years unreasonable, they have "declined to find a two-year period to be unreasonable as a matter of law." *Mohammad*, 548 F. Supp. 3d at 165. And less than 21 months have elapsed since the Geigers' case has been ready for a consular interview. *See Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *1, *4 (D.D.C. Jan. 17, 2023) (calculating time of delay as period between last action and time of opinion); *Arab v. Blinken*, 600 F. Supp. 3d 59, 63, 70 (D.D.C. 2022) (same). That delay is not unreasonable. *See also Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (holding 25-month delay not unreasonable).

The Geigers levy two counterarguments. First, they claim that "it is sufficient . . . to allege specific facts that indicate unreasonable delay" and "they need not *prove* unreasonable delay at the motion to dismiss phase." Opp'n at 8. This does little more than recite the pleading standard. And the Geigers have not plead facts suggesting the delay here is unlawful. As noted, courts in this district have routinely found lengthier delays than the one here not unreasonable as a matter of law. *See, e.g.*, *Ghadani v. DHS*, No. 19-cv-397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (collecting cases declining to hold delays of more than 25 months unreasonable as a matter of law).

Second, the Geigers rely on three old, unpublished Northern District of California decisions finding "similar delays unreasonable." *See* Opp'n at 8. These cases are unpersuasive,

and they are distinguishable.  Most importantly, those cases do not apply *TRAC*, which is binding

in this circuit.  More, those cases hold that a delay greater than two years is presumptively

unreasonable as a matter of law.  The Geigers do not allege that length of delay here.  So the

Court is unmoved by the Geigers' out-of-circuit authorities.

The Court thus finds that the first and second *TRAC* factors favor the Government.

**2.**

Next up is the fourth *TRAC* factor, or the "effect of expediting delayed action on agency

activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  "This factor carries the

greatest weight in many cases."  *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 167 (D.D.C. 2021)

(cleaned up).  The Court must consider "competing priorities for limited resources."  *Mashpee*,

336 F.3d at 1100–02 (cleaned up).  Indeed, the D.C. Circuit has "refused to grant relief" when "a

judicial order putting the petitioner at the head of the queue would simply move all others back

one space and produce no net gain."  *Id.*

So too here.  The Geigers ask the Court to adjudicate their petition or compel the

Government to schedule a consular interview.  *See* Pet. at 6–7.  But the Court may not let them

"skip the line and . . . move all others back one space."  *Mohammad*, 548 F. Supp. 3d at 167

(cleaned up).  To be sure, the effect of expediting the Geigers' vias may be minimal, but many

"such individual cases being pushed by judicial fiat to the front of the line would erode the

ability of agencies to determine their priorities."  *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150

(D.D.C. 2021).

The Geigers push back.  First, they warn that siding with the Government would establish

a rule presumptively weighing the fourth *TRAC* factor for the Government when "the plaintiff is

not the first person in 'line' for adjudication."  Opp'n at 9.  This is not correct.  *See, e.g.*, *Afghan*

& *Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-cv-1388, 2019 WL 4575565, at \*10–11 (D.D.C. Sept. 20, 2019) (agreeing with plaintiff on the fourth factor).  For example, when a statute mandates the Government to prioritize a category of applicants, as in *Afghan and Iraqi Allies*, ordering the Government to process those applications "obviate[es] any concerns of queue-jumping."  *Id.* at \*10–11.  But that is not this case.

Second, the Geigers cite more out-of-circuit authorities to argue that the Government should not punish them for its own resource problems.  Opp'n at 8–9.  Again, these cases are unpersuasive and inapt.  For starters, much of what the Geigers rely on is dicta making the general point that immigration agencies may be facing a policy crisis based on a backlog of applications.  *See id.* at 9.  Plus, the Government's justification here is a worldwide visa backlog caused by the extraordinary COVID-19 pandemic—not a lack of resources.  *See* MTD at 3–4.  So though "it may be a valid proposition that the Government cannot prevail on *TRAC* factor four through a generic recitation of lack of sufficient resources, such a case is hardly present here."  *Manzoor v. USCIS*, No. 21-cv-02126, 2022 WL 1316427, at \*6 (D.D.C. May 3, 2022).

More, the Geigers' cases do not refute case law in this district finding the Government's same argument reasonable and deferring to the way it prioritized visa petitions.  *See, e.g.*, *Tate*, 513 F. Supp. 3d at 150 ("Defendants face an extraordinary backlog of visas across the world[.]").  Three of their four cases do not even apply the *TRAC* factors to assess unreasonable delay.  *See id.* at 8–9.

Finding for the Government on this factor may suffice to reject the Geigers' unreasonable delay claims.  *See Mashpee*, 336 F.3d at 1100.  In any event, the other TRAC factors also favor the Government.

**3.**

The Court looks next to *TRAC* factors three and five.  These involve "the interests prejudiced by delay," including the impact on "human health and welfare."  *TRAC*, 750 F.2d at 80.  The Geigers claim that the delay has caused them emotional distress, financial strain, and lost professional opportunities.  *See generally* Decl. of Tara Bowness Geiger (Decl.) ¶¶ 14–23, ECF No. 7-1.

The Court acknowledges the challenges the Geigers have faced by putting their lives on hold while they await determination on their application.  But "many others face similarly difficult circumstances as they await adjudication of their visa applications."  *Mohammad*, 548 F. Supp. 3d at 168–69.  Indeed, some of the Geigers' challenges—like their decision not to leave Canada during the two years before filing their petition and their decision to renew their Fiesta Bowl tickets after filing their I-140 form—spring from their own choices.  *See* Decl. ¶ 22.  They cannot blame the Government for the consequences of these decisions.  Likewise, the Geigers' claim that the delay has cost them economic opportunities in the United States falls short.  *See* Decl. ¶ 16; *Kushnood*, 2022 WL 407152, at *5 (holding an I-140 petitioner's financial hardship is insufficient without specific effects on "health or physical welfare"); *cf. Nibber v. USCIS*, No. 20-cv-03207, 2020 WL 7360215, at *6 (D.D.C. Dec. 15, 2020) (holding this factor favors plaintiff where plaintiff lost all income).

Even if the third and fifth *TRAC* factor favored the Geigers, they do not "override the other factors[,] . . . particularly the Government's competing priorities and the fact that granting

relief to [the Geigers] would simply move all other back one space." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).

**4.**

Finally, the sixth *TRAC* factor is neutral.  It instructs courts that they "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80.  The Geigers argue no bad faith here and admit that this factor is immaterial.  *See* Opp'n at 10.

Thus, the Geigers' unreasonable delay claims fail under the *TRAC* factors.  And because they fail to establish undue delay, their claim for mandamus relief "necessarily fails as well." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020).  The Court does not doubt that waiting on a visa has harmed the Geigers.  But "delays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Id.* at 169.  And the Geigers offer no reason that the Court should allow them to skip ahead in the line.

**B.**

Finally, the Geigers argue that the Government's failure to "provide a reasonable and just framework of adjudication" violates their Fifth Amendment due process rights.  Pet. ¶ 25.  This raises a threshold question:  Are aliens residing outside the United States entitled to constitutional due process protections at all?

"The guarantees of the Constitution are not automatically applied to foreign nationals. Indeed, aliens receive constitutional protections only when they have come within the territory of the United States and developed substantial connections with this country." *Bazzi v. Gacki*, 468 F. Supp. 3d 70, 77 (D.D.C. 2020) (cleaned up).  But the Court need not decide whether the Geigers have alleged an adequate connection with the United States.  Even if the Geigers' enjoy

constitutional due process protections, their claims straightforwardly fail on the merits.  *See id.* at 78.

The Fifth Amendment provides that "no person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  To state a claim under the Due Process Clause, a plaintiff first must show "there was a cognizable liberty or property interest at stake."  *Hamal v. DHS*, No. 19-cv-02534, 2020 WL 2934954, at *4 (D.D.C. June 3, 2020); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  If such an interest is present, the procedural due process guarantee demands the Government provide "a meaningful opportunity to present" a case.  *Eldridge*, 424 U.S. at 332.

When a fundamental right is implicated, and the Government's failure to act constitutes a deliberate indifference to that right, a plaintiff has stated a viable substantive due process claim.  *See L'Association des Americains Accidentels v. DOS*, No. 20-cv-02933, 2022 WL 4534687, at *9 (D.D.C. Sept. 28, 2022); *Est. of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006).  It is unclear whether the Geigers have alleged a violation of their substantive or procedural due process rights.  *See Khushnood,* 2022 WL 407152, at *5 n.4 (explaining procedural problems with unclear due process pleading in a similar case).  Regardless whether the Geigers literally stated both claims, they have legally stated neither.

The Geigers offer little guidance in terms of "what . . . interest the agency infringed."  *Khedkar v. USCIS*, 552 F. Supp. 3d 1, 20 (D.D.C. 2021).  First, they cite two Ninth Circuit cases holding an individual's "immediate relative status" is a protected interest.  *See* Opp'n at 11 (citing *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013) and *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008)).  Second, they argue that the "right . . . to apply for the benefit" is "protected by due process."  Opp'n at 11.  Neither the Geigers' immigration status nor their

right to apply are within the reach of the Due Process Clause.  *See Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011) ("Nor do aliens also have a constitutionally-protected interest in the procedures by which such visas are obtained.").

   *Ching* and *Bustamante* do not help the Geigers.  In these cases, the Ninth Circuit identified a property interest in "immediate relative status" for purposes of an *I-130 petition*, which is based on the applicant's marital status.  *Ching*, 725 F.3d at 1156.  Not only is the Ninth Circuit's reasoning irrelevant for an I-140 applicant, as it is based on employment or employability, but courts in this district have repeatedly rejected it.  *See, e.g.*, *Zandieh v. Pompeo*, No. 20-cv-00919, 2020 WL 4346915, at *8 (D.D.C. July 29, 2020) ("This Court one again declines the invitation to follow *Bustamante*, and it finds that Plaintiffs have not stated a claim under the Fifth Amendment."); *see also Marquez v. Pompeo*, No. 20-cv-3225, 2022 WL 43492, at *7 (D.D.C. Jan. 5, 2022) (cleaned up) (no due process in a denial of an I-140); *Hamal*, 2020 WL 2934954, at *4 ("Because Plaintiff has not pled facts that plausibly demonstrate a cognizable property or liberty interest in the 'extremely restrictive' extraordinary ability designation . . . the Court will dismiss his Due Process claim.").

   More, even if applying for a visa were a protected interest, the visa approval process is "governed by a rule of reason" and thereby not infringed in this case.  *Dean v. DHS*, No. 21-cv-2002, 2022 WL 2785967, at *9 (D.D.C. July 15, 2022).

   Finally, the Court also rejects the Geigers' suggestion that entry to the United States upon application is a protected interest.  *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

The lack of protected interest in their case also sinks the Geigers' substantive due process claim.  *See Rafeedie v. INS*, 880 F.2d 506, 197–200 (D.C. Cir. 1989) (holding a visa is not a fundamental right).  This is so because the Geigers have not explained how the Government acted "deliberately indifferent" to their rights.  *Est. of Phillips*, 455 F.3d at 403.  The Government's explanation—delays because of the COVID-19 pandemic—is not "conscience-shocking."  *Id.*; *see* MTD at 3.

Thus, the Geigers' Fifth Amendment claim will be dismissed for failure to state a claim.

### IV.

For these reasons, the Court will grant the Government's motion to dismiss.  A separate Order will issue today.

Dated:  March 31, 2023

_____
TREVOR N. McFADDEN, U.S.D.J.